# John Maxon, Appellant, v. United States Underwriters Company and Frederick Brockhouse, Appellees.

## Gen. No. 8,055.

1. HIGHWAYS AND STREETS—*effect of scienter on possession of automobile with changed number.* The crime of having in possession an automobile with the original engine number removed, defaced or altered, as denounced in Cahill's St. ch. 95a, ¶ 36, has no qualification and the element of *scienter* does not enter into it.

2. HIGHWAYS AND STREETS—*purpose of penalizing possession of automobile with changed number.* The purpose of Cahill's St. ch. 95a, ¶ 36, in making a crime of the possession of an automobile with a defaced, destroyed or altered engine number was not only the protection of car owners from theft, but of the general public from crimes and escape of criminals, in stolen cars.

3. CONVERSION—*burden of proving ownership.* A plaintiff in trover has the burden of proving his alleged ownership of an automobile, which was taken from him on the ground that the engine number had been altered, and was then turned over to the true owner.

4. HIGHWAYS AND STREETS—*purpose of permitting automobile owners to mark new engine number.* The purpose of the proviso in Cahill's St. ch. 95a, ¶ 36, permitting automobile owners to mark a new number on their automobile engines is to permit those whose engine numbers have been altered through no fault of theirs to put a new number upon the engine and thus escape the penalty prescribed for possessing a car with altered engine number.

5. HIGHWAYS AND STREETS—*effect of proviso, in statute forbidding possession of automobile with altered engine number.* The penalty for possessing or owning an automobile with altered engine number, denounced in Cahill's St. ch. 95a, ¶ 36, is not weakened or affected in any way by the proviso therein permitting owners whose numbers have been altered without their fault to secure a new number.

6. APPEAL AND ERROR—*effect of conflicting instructions on proper verdict.* If a verdict against plaintiff was clearly proper and none other could have been rendered as a matter of law, his right in review will not be affected by the mere fact that certain instructions given were improper as being in conflict.

7. CONVERSION—*necessity of ownership in plaintiff.* A plaintiff in trover, who was shown on the trial to have had possession of an automobile with an altered engine number when it was taken from him and who could not show title in the way prescribed by statute for automobile owners and had no bill of sale of the car and had not reported his purchase to the authorities or taken out a license, had no such ownership as entitled him to recover.

8. HIGHWAYS AND STREETS—*on what court's custody of automobile with altered engine number depends.* The court's custody of an automobile with an altered engine number is made to depend, by Cahill's St. ch. 95a, ¶ 36, upon the fact that the person in whose possession such automobile is found, is being prosecuted for possession of an automobile with an altered number and that the car is to be junked under the court's order if such fact be proved.

9. CONVERSION—*right to possession by criminal possessor of automobile as affected by failure to prosecute.* A failure to prosecute one who has been found with an automobile having an altered engine number, penalized under Cahill's St. ch. 95a, ¶ 36, and the consequent failure of the court to take custody of the car, and a turning of the car to the alleged true owner, has no effect on such criminal's right of possession to the car.

Appeal by plaintiff from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding. Heard in this court at the October term, 1926. Affirmed. Opinion filed October 31, 1927.

JOHN J. FRIEDMEYER, for appellant.

HENRY L. CHILD, for appellees; H. P. SAMUELL, of counsel.

PER CURIAM.

Suit was begun by appellant against appellees in replevin. The declaration consisted of three counts, two in replevin and one in trover. The first count averred defendants took and detained one certain 1924 model Ford Tudor sedan (describing it), and averred that the correct number was not known, and that it was the property of plaintiff and of the value of five hundred dollars. The second count averred that defendants unjustly detained the property described in the first count. The third count was in trover, with the usual technical terms to describe the cause of action, and averred that plaintiff was the owner. The usual pleas were filed to the several counts and it is considered unimportant to set them out. Before the trial all defendants except one were dismissed out of the

case and trial was had as to the Underwriters Company and Frederick Brockhouse, who was later made a party defendant.

Appellant resided about four miles south of the city of Springfield, in the country. While driving the automobile in question, not far from his home it was seized by Jessburg, Shafer and Healy, who were police officers in the city of Springfield. Appellant claims to have purchased the automobile about the middle of November, 1924, from a stranger named "George," whom he had never seen before, nor since, at the farm of "Teal" Harvey, located about three miles south of Springfield. Appellant claimed that before he purchased the automobile he had it examined at this farm by a Springfield mechanic named Crocker. Crocker, however, testified that he did not examine the automobile at the farm but examined an automobile similar to the one described by appellant on Fifth street, in the city of Springfield.

Appellant further testified that he did not know the engine or motor number on the automobile at the time he claims to have purchased it, or at any time during the time he had possession of it, nor did he know whether or not the original engine number had been altered, removed or changed. Appellant further testified that he did not know what the number of the license plate was on the automobile at the time he claims to have purchased it, as the seller took it away with him, nor did appellant apply to the secretary of state for a new license either in 1924 or 1925. Appellant did not secure from the seller a bill of sale of the automobile or other evidence of transfer, nor did he secure any receipt or evidence of payment for the automobile from the seller, and claims to have paid the seller $450 in cash for the automobile without any of the extra equipment that he claims to have placed on the automobile after he claims to have purchased it.

J. E. Rose positively identified the automobile in question as the car stolen from him in Jacksonville in May, 1925. Officer Shafer of the police force of the city of Springfield, R. A. Balcom, garage owner, John E. Rose and J. V. Kennedy examined the automobile at once after the officers took possession of it from appellant. Each of these witnesses testified that the original engine or motor number of the automobile had been changed, altered and removed and a new motor or engine number substituted therefor on the engine block. There was no denial by appellant or any of his witnesses that such original engine number had been so altered, changed or removed and a new engine number substituted therefor. All that appellant claimed in this regard was that if such change, alteration or substitution had been made it had not been made with his knowledge or consent, and that he knew nothing about it.

The property not having been found, the trial was had on the count in trover. The jury found the defendant not guilty, motion for a new trial was denied and judgment in bar of the action was rendered, with judgment against appellant for costs. To reverse the judgment this appeal is prosecuted. The errors assigned will be noticed, so far as it is deemed necessary to a disposition of the case. The contention for reversal of the judgment is based upon two instructions given for appellees. They are: ''The Court instructs the jury if they believe from the preponderance of the evidence that the original engine number on the automobile involved in this suit had been destroyed, removed, altered, covered or defaced during the time that such automobile was in the possession of the plaintiff, or prior thereto, that in such case plaintiff cannot recover in this suit, and you should return a verdict for the defendants, even though you may further believe from the evidence that the plaintiff did not know that such original engine number on said automo-

bile had been destroyed, removed, altered, covered or defaced during the time above mentioned.''

''The Court instructs the jury that under the Motor Vehicle Law of this State, it is unlawful to possess any automobile, the original number of which has been destroyed, removed, altered or defaced. And if from the greater weight of the evidence you believe that the original engine number of the automobile involved in this case had been removed, altered or defaced, and that the same was so altered, removed or defaced at the time of the alleged taking thereof from the plaintiff, then and in such case the plaintiff was not at said time entitled to the possession of said automobile and your verdict should be in favor of the defendants.''

Both instructions are substantially in the language of the statute,—section 35 of the act in relation to vehicles, Cahill's St. ch. 95a, ¶ 36. It denounces as a crime the owning, having the custody or possession of a motor vehicle, the original engine number of which has been destroyed, removed, altered, covered or defaced. There is no qualification of the possession declared to be a crime. The element of scienter does not enter into it. The underlying policy of the legislation is succinctly expressed in *People v. Billardello*, 319 Ill. 124, 125: ''The prohibition * * * was enacted in the exercise of the police power in the interest of the general welfare, not only for the protection of that part of the public who may be the owners of automobiles against theft, but for the protection of the public in general against the commission of crimes and the escape of criminals by the use of stolen automobiles whose identification is made difficult by the destruction of identifying marks. Not only is the stealing of automobiles an extensive criminal avocation, but stolen automobiles are used extensively in the commission of other crimes in bringing the criminals to the scene of their criminal action from a great distance and in enabling them to depart swiftly to a great dis-

tance, leaving slight clues to their identity. These evils, and others connected with the use of automobiles and other motor vehicles, have rendered the adoption of stringent legislative regulation of dealing in motor vehicles, and of the transfer and use of them, necessary for the protection of the public.''

Referring to *People v. Fernow,* 286 Ill. 627, and *People v. Johnson,* 288 Ill. 442, it is said: ''The legislature has deemed it necessary to the protection of the public from the evils arising from the unregulated use, sale and transfer of motor vehicles, from the crimes committed by their use, from the thefts to which they are so readily subject, to provide a system of registration and identification. This is in part based on the factory and engine numbers, which must be shown in the bill of sale which every manufacturer or dealer, on the sale of any motor vehicle, is required, to give to the purchaser. The purchaser is required, within ten days, to apply to the Secretary of State for a certificate of registration, and his application must state the factory and engine numbers of the vehicle. On every transfer the vendor must give a bill of sale showing the factory and engine numbers and remove the license number plate or plates from the vehicle, and the purchaser must register the vehicle as in case of an original registration. Thus, if purchasers of motor vehicles will observe the plain provisions of the law, the ownership of any motor vehicle may be readily traced from the manufacturer to the owner at any time. There is no hardship in requiring every citizen to observe the provisions of the law enacted for the protection of all citizens. Bills of sale must accompany every transfer from the manufacturer to the last owner. * * * This provision was not intended to relieve the purchaser of a motor vehicle the engine number of which had been destroyed, removed, altered or defaced, from the penalty incurred by reason of his neglect to ascertain that fact, but was in-

tended, as the language expresses, for the benefit of a person the original engine number of whose motor vehicle, while in his possession, has been without his knowledge or consent destroyed, removed, altered or defaced.'' (*People v. Oberby*, 323 Ill. 364.)

The circumstances under which appellant purchased the automobile cast a cloud on his title under the statute as construed by the court. In the first place, he purchased it, he states, from a man named ''George.'' He had never seen him before and has not seen him since. He did not know his surname. Appellant states that Crocker examined this automobile for him at the Harvey farm. Crocker states that he did not examine it there, but did examine an automobile like this in Springfield. It is not shown that Crocker ever saw this car. Appellant did not know the engine numbers when he purchased the car. He did not know whether the original engine number had been changed or removed. When he purchased he did not know what the license plate number was. The seller took that away with him. Appellant applied for no license in 1924 or 1925. Why? He knew if he did apply to the secretary of state for such license he must give a minute description of the car, its engine number and other information that would embarrass him. No one can read the evidence and believe that the number on the engine was not changed when appellant purchased the car. The evidence of ownership is not left in doubt. While appellant testifies that he purchased it in 1924, every circumstance is against him. The jury found against him on the issue of ownership and could not, under the law and the facts, have found differently. The burden was cast upon appellant to prove ownership. If he had followed the plain provisions of the statute and if he did purchase the car when he testifies he did, he would have been able to establish a clear paper title from the factory to himself. Counsel seems

to rely upon the proviso of the statute above referred to.

It is said in the brief that an owner or custodian of a car, with a changed original number, may apply to the secretary of state for permission to make or stamp or cause to be made or stamped on the engine a special engine number. But it is not the intention of the statute that he may or may not at pleasure do so. Such a construction would not advance but retard the remedy. "May" in that connection expresses the right to do so. A proviso cannot weaken nor take away the positive authority of the purview of a statute. The purpose of the statute is the protection of the public in the different respects the learned justice so clearly lays down in the *Billardello* case, *supra*. It is clear the proviso was inserted for the benefit and protection of those who may find their title to automobiles precarious when they are not at fault. If they do not exercise the right, they refrain at their peril. In that event, the power is placed in their hands to remedy it, if they see fit. But no laxity of observance of the act is authorized. The proviso in no manner changes the effect of the purview and appellant, having failed to avail of its saving feature, is in no position to complain. It may be added that the purpose of the proviso is only in aid of those who are able, under the provisions of the statute, to trace good title to the machine.

Appellant contends that the instructions given for appellee are directly contradictory to two instructions given for appellant. The first informed the jury in substance that if they believed from the preponderance of the evidence that plaintiff was entitled to the possession of the automobile and equipment thereto attached, and was in the actual possession thereof at the time it was forcibly taken by the police officers, * * * and that said car was not stolen, and that the engine numbers thereon had not been destroyed, removed,

altered, covered or defaced, plaintiff was entitled to recover. The other instruction informed the jury that if they believed from the evidence that Kennedy, on behalf of defendant United States Underwriters Company, converted the property to his own use or to the use of the company, and that plaintiff was entitled to the possession, they should find the issues for the defendant and assess his damages at the fair cash market value at the time of its delivery. In so far as the instructions do conflict in advising the jury to find the right of possession in the plaintiff, they were improperly given. The mere fact of conflict cannot affect appellant's right in review if the verdict was clearly right and none other could have been rendered as a matter of law. Courts of appeal do not sit to review judgments because errors may have intervened if no other result could be legally attained on another trial. Appellant was not entitled to the possession of the car at the time it was taken from him by the police officers. His possession was in violation of a criminal statute. He would not be heard to say he thought or believed he had a right to possession for the reasons stated in the *Billardello* case. The evidence clearly shows, not only criminal possession, but that he had no shadow of title he could assert as against appellees.

Some complaint is made that the court did not retain possession of the car after it had been seized by the officers. The duty to do so rests upon compliance with the requirements of the second paragraph of section 35 of the Motor Vehicle Act, Cahill's St. ch. 95a, ¶ 36. It was the duty of the officers under that paragraph to seize the vehicle, arrest the custodian thereof, and cause prosecution to be brought in a court of competent jurisdiction. In that event, it would have been the duty of the court to retain the custody of the vehicle pending the prosecution of the person arrested and in case of conviction the motor vehicle should remain in the custody of the court until the fine and costs

of prosecution should be paid. When the fine and costs should be paid, it would be the duty of the court to deliver the vehicle to the supposed owner or custodian for the sole purpose of removing the engine from said motor vehicle and tearing apart said engine and disposing of the same for "junk." There could, therefore, be no custody for the court to retain, the custodian (appellant here) not having been prosecuted for violation of the act, but that fact could not possibly change or in any manner affect the legal rights of the owner of the car. Those rights could not be affected by the officer turning the property over to the owner instead of bringing it into court and having the engine "junked." It does not lie with plaintiff, custodian in this case, to complain that the engine was not "junked."

The judgment of the circuit court conforms to the facts and the law applicable thereto, and is accordingly affirmed.

*Affirmed.*